**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted August 10, 2009[*]
Decided August 10, 2009

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 09-1246

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Western District |
| | of Wisconsin |
| *v.* | |
| | No. 07-CR-058-BBC-1 |
| CARLTON EMBRY, | |
| *Defendant-Appellant*. | Barbara B. Crabb, |
| | *Chief Judge*. |

**O R D E R**

   Carlton Embry pleaded guilty to possession with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1). At his first sentencing hearing, the district court imposed a 265-month sentence under the crack cocaine guideline, U.S.S.G. § 2D1.1, but, over Embry's objection, treated the crack/powder disparity in § 2D1.1 as mandatory. The

---

   [*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

Supreme Court subsequently held in *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558, 564 (2007), that district courts may consider the crack/powder disparity as a basis for choosing a below-Guidelines sentence. We remanded Embry's case for resentencing in light of *Kimbrough*. *United States v. Clanton*, 538 F.3d 652, 660 (7th Cir. 2008). At the resentencing hearing, the district court considered Embry's sentencing arguments based on *Kimbrough* and other policy grounds and chose a minimum-Guidelines sentence of 188 months. In this successive appeal, Embry argues that the district court failed to adequately address his objections to both the crack cocaine guideline and the career offender guideline, § 4B1.1. We review for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 597 (2007).

Beginning with Embry's objection to § 4B1.1, it is necessary to first explain why that guideline had particular relevance to Embry's second sentencing hearing. Embry qualified as a career offender under § 4B1.1 based on his prior felony convictions for cocaine possession and armed robbery. Nonetheless, at the time of his first sentencing, Embry was effectively sentenced under § 2D1.1, rather than § 4B1.1, because his offense level of 36 under the then-current version of § 2D1.1 was higher than his offense level of 34 under § 4B1.1. *See* U.S.S.G. § 4B1.1(b). By the time of his January 8, 2009 resentencing, the Sentencing Commission had amended § 2D1.1 to reduce the crack/powder disparity in that guideline. *See* U.S.S.G., Supp. to App. C, at 226-31 (2008) (Amendment 706). As a result, Embry's offense level under § 2D1.1 was only 34, the same as his offense level under § 4B1.1, meaning that he received the same 188-235 month Guidelines range whether sentenced under § 2D1.1 or § 4B1.1.

Recognizing the importance of § 4B1.1 to his second sentencing hearing, Embry challenged the career offender guideline as unsupported by empirical data and a poor predictor of recidivism. The district court was unpersuaded, noting that Embry's repeated criminal activity indicated a high risk of recidivism. The court continued by offering a detailed explanation for why the sentence suggested by § 4B1.1 was appropriate for Embry's particular case. The court emphasized Embry's extensive, "disturbing" criminal history, which included a felony conviction for cocaine possession, a felony conviction for armed robbery, and several misdemeanors involving violence against police officers and others. This violent history demonstrated that Embry was a danger to society and unable to conform his conduct to the law. In order to protect the community and hold Embry accountable for his continued criminal conduct, the court concluded that a minimum-Guidelines sentence of 188 months was appropriate.

This analysis more than satisfied the district court's duty to "adequately explain the chosen sentence" under the career offender guideline. *Gall*, 128 S. Ct. at 597. *Kimbrough* may have authorized the court to choose a lower sentence based on a policy disagreement with § 4B1.1. *See Kimbrough*, 128 S. Ct. at 570; *United States v. Harris*, 536 F.3d 798, 813 (7th Cir. 2008) (explaining the advisory nature of § 4B1.1). It does not follow that the court was required to accept Embry's policy challenge to the career offender guideline and select a below-Guidelines

sentence. *See United States v. Huffstatler*, 571 F.3d 620, 623-24 (7th Cir. 2009) (per curiam) (explaining that, while a district court may have the discretion to disagree with a guideline based on a lack of empirical support, it is not required to do so); *United States v. Scott*, 555 F.3d 605, 610 (7th Cir. 2009) ("If a district court may deviate from the Guidelines based on its disagreement with the Sentencing Commission's policy, it is equally within its authority to adhere to the Guidelines because it concurs with the policy judgment the Guidelines reflect.").

Embry also contends that the district court failed to adequately address his policy objection to the crack cocaine guideline, § 2D1.1. At his resentencing hearing, Embry argued that *Kimbrough* authorizes district courts to choose a lower sentence based on a policy disagreement with the crack/powder disparity in § 2D1.1, and that this disparity, though recently reduced by Amendment 706, remains too high. *See United States v. Spears*, 129 S. Ct. 840, 843 (2009) (per curiam) (explaining that, under *Kimbrough*, district courts may rely on "a categorical disagreement" with the crack cocaine guideline). The district court's explanation for rejecting Embry's crack/powder disparity argument was less extensive than its treatment of his objection to § 4B1.1. Still, the court's reasoning was sufficient to withstand abuse of discretion review. The court acknowledged that, under *Kimbrough*, "district courts may consider the discrepancies between sentences for crack cocaine and powder cocaine when sentencing." The court further recognized that, if sentenced under § 2D1.1, Embry's offense level of 34 would have been 8 to 14 levels higher based solely on the fact that he possessed crack rather than powder cocaine. But the court then stated that Embry's "total offense level would not have changed because [he was] deemed to be a career offender." This statement indicates that, were it not for Embry's career offender status, the court might have given additional consideration to Embry's request for a below-Guidelines sentence based on the crack/powder disparity in § 2D1.1. However, since the court found that the sentence suggested by § 4B1.1 was appropriate for Embry's particular case, any policy disagreement with § 2D1.1 was inconsequential. Given the court's detailed explanation for sentencing Embry under § 4B1.1, the court's reliance on Embry's career offender status was sufficient to dispose of Embry's crack/powder disparity argument.

Next, Embry argues that the district court failed to provide a full resentencing in light of *Kimbrough*, as required by our remand order in his first appeal. He suggests that the court erroneously applied the less robust procedure provided by 18 U.S.C. § 3582(c)(2), which allows crack cocaine offenders sentenced under § 2D1.1 to move for a reduced sentence based on the Sentencing Commission's Amendment 706 to § 2D1.1. This argument has little merit. The sentencing transcript indicates that the court conducted a full resentencing hearing, heard all of Embry's policy objections to § 2D1.1 and § 4B1.1, and explained why, in light of the sentencing factors of 18 U.S.C. § 3553(a), the sentence suggested by the career offender guideline was appropriate for his particular case. As mentioned above, the court emphasized Embry's violent, criminal history. *See* 18 U.S.C. § 3553(a)(1) (addressing "the history and characteristics of the defendant"). Based on that history, the court considered Embry "a danger

to the community" who needed "time away from the community to mature and be less of a risk to the community." *See id.* § 3553(a)(2)(C) ("to protect the public from further crimes of the defendant"). Embry's continuing criminal behavior also indicated an inability to conform his conduct to the law and a high risk of recidivism. *See id.* § 3553(a)(2)(A) ("to promote respect for the law"). Based on these factors, the court determined that a minimum-Guidelines sentence of 188 months was necessary to reflect the "serious nature" of Embry's conduct and to hold him accountable. *See id.* ("to reflect the seriousness of the offense . . . and to provide just punishment"). The defense had a full opportunity to address the court both in person and in written form at the resentencing. The court's sentencing analysis was extensive.

True, since Embry's offense levels under § 2D1.1 and § 4B1.1 were the same, the career offender sentencing range adopted by the district court turned out to be exactly what Embry might have received through a § 3582 motion for a lower sentence under the amended version of § 2D1.1. Still, this coincidence does not diminish the scope of the sentencing proceedings that actually took place. The district court did not treat Embry's resentencing hearing as a simple § 3582 motion.

Finally, Embry argues that his sentence is substantively unreasonable. That is a difficult argument to win, since we apply a presumption of reasonableness to Embry's minimum-Guidelines sentence of 188 months. *United States v. Sainz-Preciado*, 566 F.3d 708, 716-17 (7th Cir. 2009). To try to rebut this presumption, Embry merely argues that a sentence based on either § 2D1.1 or § 4B1.1, which prescribe disparately harsh sentences for career crack cocaine offenders without any empirical support, is substantively unreasonable. We discern no meaningful difference between this argument and Embry's policy challenges to the crack cocaine and career offender guidelines, which, as explained above, the district court adequately considered and rejected.

Accordingly, we **AFFIRM** Embry's sentence.